UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHOUKRY FAUNTLEROY,** | : | **No. 3:25-CV-1701** |
| | : | |
| **Plaintiff** | : | **(Mehalchick, J.)** |
| | : | |
| **v.** | : | **(Caraballo, M.J.)** |
| | : | |
| **ONEMAIN FINANCIAL d/b/a ONEMAIN,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

## I.   <u>Introduction</u>

Before the Court is a motion to compel arbitration and dismiss or stay this action, filed by Defendant OneMain Financial d/b/a OneMain[1] ("OneMain"), under the Federal Arbitration Act ("FAA"), Title 9, United States Code, Section 1 et seq.  Doc. 23.  The motion is fully briefed and ripe for decision.  The undersigned has jurisdiction to adjudicate this motion, under Title 28, United States Code, Section 636(b)(1)(A).  *See V.I. Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 1334 (3d Cir. 2014) ("[M]otions to compel arbitration and stay the

---

[1] As noted by the defendant, its correct business operating name is OneMain Financial Group, LLC.  Doc. 25 at 6.

proceedings are not" dispositive, as "[a] ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein.  Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation. . . . Given this, we see no exercise of Article III power when a Magistrate Judge rules on a motion to compel arbitration.").

For the reasons set forth below, the motion to compel arbitration will be granted, and this matter will be stayed pending completion of arbitration proceedings.

## II.    Background

On September 2, 2025, Plaintiff Shoukry Fauntleroy, proceeding pro se, commenced this action against several financial institutions in the Eastern District of Pennsylvania.  Doc. 1.  On September 11, 2025, the Eastern District of Pennsylvania transferred the case to this district.  Doc. 5.  On December 5, 2025, the Court granted Fauntleroy's motion to file the operative amended complaint.  Docs. 17–20.

The gravamen of the amended complaint rests on financial debts and credit denials resulting from an alleged loan transaction between Fauntleroy, as the borrower, and OneMain, as the lender.  According to

Fauntleroy, the transaction between the parties entailed him allegedly surrendering the title to his personal vehicle in exchange for "a secured loan of $12,700" on "terms and conditions that [he] would never accept knowingly."  Doc. 20 at 3–16.  Relevant to this Memorandum, Fauntleroy avers that, when obtaining the loan at OneMain's place of business on May 10, 2024:

> 19. Defendant OneMain Financial's agent led Plaintiff to a room in the rear of business location and was seated next to a computer monitor screen.  . . . .
>
> 21. Defendant manipulated the display of a digital document, which appeared to be a webpage displaying website terms of use, by swiping the screen and clicking a mouse of a computer stationed in the rear room.
>
> 22. The document was not made available to Plaintiff in print at the time of supposed acceptance, even after Plaintiff's distinct request to Defendant.
>
> 23. Since the digital document was not legible to Plaintiff on the computer screen, he asked Defendant to print it and supply him with that copy.  Defendant explicitly refused, stating that she "cannot".
>
> 24. After Plaintiff explicitly asked to view a printed copy of the document on the screen, Defendant refused and warned Plaintiff that the new amount "would not be disbursed" to him unless he accepted it via the screen.
>
> 25. Plaintiff believed he was accepting the amount of $12,700 offered by secure loan from Defendant whilst tapping on the screen to "accept" it.

*Id.* at 4.

3

Fauntleroy claims that he signed documents related to his vehicle's title and an associated lien "with a wet-ink signature," but that OneMain "unlawfully forged his printed name as an e-signature" on the actual loan agreement. *Id.* at 5. Fauntleroy attached a copy of his loan agreement with OneMain to the original complaint, and referenced the same exhibit in his amended complaint. Docs. 1 at 27–33; 20 at ¶ 32. The amended complaint also included a copy of the loan agreement bearing stamps stating, "Paid in Full 08/01/2024 OneMain Financial." Doc. 20-5 at 2–7.

The loan agreement bears Fauntleroy's electronic signature in various locations, date stamped May 10, 2024. *Id.* Fauntleroy "unequivocally disputes that validity of any 'e-signature' bearing his name as he did not knowingly or willingly sign the digital loan agreement document, electronically or otherwise at any point in time." Doc. 20 at 8 n.3. The loan agreement consists of six pages, with one and one-half pages devoted to an arbitration clause. Doc. 20-5 at 5–6.

Fauntleroy acknowledges that he received the $12,700 loan from OneMain in May 2024. Doc. 20 at 9. He thereafter made payments on the loan in June and July 2024, before allegedly making a series of final

4

payments on August 1, 2024, including through a check issued for $8,400. *Id.* at 11. Fauntleroy thereafter received documents from OneMain, including the stamped loan agreement and a release of lien, stating that he fulfilled payment on the loan. *Id.* at 11–12.

According to the amended complaint, however, the parties' relationship did not conclude. Rather, in the ensuing months, Fauntleroy allegedly received communications from OneMain advising that a substantial portion of his final payment—the $8,400 check—was either lost or returned by his financial institution. *Id.* at 13–15. Fauntleroy declined to provide OneMain with a new check. *Id.* As a result, Fauntleroy claims that he subsequently suffered injury, including a reduction in his credit score, denial of credit lines, and a denial of a student loan. *Id.* at 18.

Based on those allegations, Fauntleroy commenced this action, in which he advances 12 apparent state and federal law claims, including breach of contract, fraud, unjust enrichment, and violation of the Fair Debt Collection Practices Act, Title 15, United States Code, Section 1692. *Id.* at 22–31. OneMain filed a timely motion to compel arbitration and dismiss or stay this action on December 22, 2025, and

associated briefs.  Docs. 23; 25; 30.  Fauntleroy filed an opposition and, with the Court's permission, a sur-reply.  Docs. 29 (as construed by Doc. 47); 48.[2]

## III.  <u>Discussion</u>

OneMain requests that the Court compel arbitration and either stay or dismiss this action, because its loan agreement with Fauntleroy contained an arbitration clause that encompasses this dispute.  Doc. 25 at 6.  Fauntleroy does not appear to contest that the parties' dispute falls within the ambit of the arbitration clause, but instead avers that, because OneMain did not afford him an opportunity to review the loan agreement, he never consented to the arbitration clause.  Doc. 29 at 6–9.  As Fauntleroy offers only naked assertions claiming that OneMain forged his signature on the loan agreement—despite both parties thereafter completing performance—no discovery is necessary to determine the arbitrability of this dispute.

---

[2] The Court notes that, despite filing briefs that exceeded 15 pages, neither OneMain nor Fauntleroy certified that their filings did not exceed 5,000 words, or seek leave of the Court to file briefs in excess of that limitation, as required by Local Rule 7.8(b).  Docs. 25; 29.  Both parties are directed to comply with all applicable local rules in future filings.

### A.    Legal Standard

"Under the FAA, a court, on application of one of the parties to an agreement to arbitrate, must stay a judicial action commenced in that court which is the subject of an arbitration clause or, in the alternative, must dismiss any arbitrable claims." *Shaffer v. Graybill*, 68 F. App'x 374, 376 (3d Cir. 2003) (citing 9 U.S.C. §§ 3–4). "The FAA makes agreements enforceable to the same extent as other contracts, and federal law presumptively favors the enforcement of arbitration agreements." *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999)). "Doubts about whether an arbitration clause applies to a particular dispute should be resolved in favor of coverage by the arbitration clause." *Mumma v. Pennsy Supply, Inc.*, 448 F. App'x 295, 297 (3d Cir. 2011) (citations omitted).

The FAA "enables the enforcement of a contract to arbitrate, but requires that a court shall be 'satisfied that the making of the agreement for arbitration . . . is not in issue' before it orders arbitration. . . . 'In the event that the making of the arbitration agreement is in issue, then 'the court shall proceed summarily to the trial' of that issue.'" *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771

(3d Cir. 2013) (citations omitted).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."  *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d Cir. 2009) (citations omitted).  "The initial question of arbitrability—*i.e.*, whether or not the parties validly agreed to arbitrate—is presumed to be a question for the court unless the parties clearly and unmistakably indicate otherwise."  *Dowton v. Equity Lifestyle Props., Inc.*, 2017 WL 2797971, at *2 (M.D. Pa. 2017) (citations omitted); *see also Guidotti*, 716 F.3d at 773.

In *Guidotti*, the Court of Appeals explained when to apply the standard of review applicable to motions under either Federal Rules of Civil Procedure 12(b)(6) or 56, to a motion to compel arbitration that, as here, precedes the completion of discovery:

> To summarize, when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.  But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with

8

> additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.  In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.

716 F.3d at 776 (cleaned up).  Critically, the parties may only proceed to limited discovery on the issue of arbitrability and litigate under the Rule 56 standard when the party opposing arbitration has "come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did."  *Id*. at 774 (citation and quotation omitted).

## B.    The Arbitration Clause Applies

The Court first addresses whether there is an enforceable agreement to arbitrate.  To determine whether "the parties entered a valid agreement to arbitrate," the Court "look[s] to the relevant state law of contracts."  *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264

(3d Cir. 2003) (first citing *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997); then citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002); and then citing *Harris*, 183 F.3d at 179). Under Pennsylvania law, the existence of a contract requires: "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Dicent v. Kaplan Univ.*, 2018 WL 4171600, at *4 (M.D. Pa. 2018) (citing *Blair*, 283 F.3d at 603), *report and recommendation adopted*, 2018 WL 4169072 (M.D. Pa. 2018), *aff'd*, 758 F. App'x 311 (3d Cir. 2019).

Here, there is no apparent dispute concerning the terms of the contract and the exchange of consideration. Fauntleroy attached his loan agreement with OneMain to his pleadings as exhibits, and certified that "[a]ll exhibits accompanying this Verified Complaint are true and correct copies of the original documents." Doc. 20 at 3. A review of the loan agreement finds provisions that mirror Fauntleroy's allegations; namely, that he received $12,700 from OneMain subject to an annual percentage rate of 22.25%, paid over a five-year term, and secured by a lien on his 2014 Ford Taurus. Doc. 20-5 at 2. A conspicuous arbitration agreement, titled "ARBITRATION AGREEMENT AND WAIVER OF

JURY TRIAL," comprises approximately one and one-half pages (25%) of the entire six-page loan agreement. *Id.* at 6–7. The loan agreement bears Fauntleroy's electronic signature, time-stamped and dated May 10, 2024. *Id.* at 7.

The only dispute thus lies in Fauntleroy's claim that, although he went through the process of obtaining the loan from OneMain, the lender forged his electronic signature on the loan agreement. Doc. 20 at 5. "Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register legal assent." *Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019) (citing 73 Pa. Stat. Ann. §§ 2260.301–.312). Under Pennsylvania law, "an electronic signature 'may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.'" *Dicent*, 2018 WL 4171600, at *4; *see also Schrock v. Nomac Drilling, LLC*, 2016 WL 1181484, at *3 (W.D. Pa. 2016) ("[a]n electronic record or electronic signature is attributable to a person if it was the act of the person." (citing 73 P.S. § 2260.305)). Thus, courts routinely reject challenges to the existence of binding arbitration agreements that are corroborated

11

by electronic records. *Alexander v. Acceptance Now*, 2023 WL 4347039, at *4 (W.D. Pa. 2023) (collecting cases).

Here, although Fauntleroy claims that he never accepted the terms of the loan agreement, his own allegations and submissions show otherwise. According to Fauntleroy, he traveled to OneMain's place of business on May 10, 2024, to secure a loan collateralized by his automobile. Doc. 20 at 4. A OneMain representative displayed for him "a digital document, which appeared to be a webpage displaying website terms of use," and Fauntleroy clicked "accept" on the screen to consummate the loan arrangement. *Id*. The loan agreement he now questions bears the same terms described in his complaint, and contains his personal information, including his address and vehicle VIN number. Doc. 20-5 at 2. In accordance with those terms, and as alleged in his amended complaint, Fauntleroy received $12,700 from OneMain in May 2024, and allegedly repaid the obligation in less than three months. Doc. 20 at 9–11. He acknowledges receiving an initial copy of the loan agreement, attached to his original complaint, at some point subsequent to obtaining the loan from OneMain, and another copy, stamped "Paid in Full 08/01/2024 OneMain Financial," after

12

submitting final payment on the loan. *Id*. at 5, 11. He likewise acknowledges receiving a release of the lien on his vehicle, which served as security for the loan, upon final payment. *Id*. at 12.

Only after the business relationship between the parties soured, did Fauntleroy challenge the efficacy of the loan agreement. But his claims of forgery, bereft of any supporting rationale or reliable evidence, constitute no more than a naked assertion that he did not intend to be bound by the arbitration agreement, even though his own allegations and actions evince a mutual intent to contract. Indeed, by Fauntleroy's logic, he should have neither received $12,700 from OneMain, nor had any obligation to repay it, absent a viable contract. That scenario, however, does not comport with reality, and he cannot take advantage of certain terms of a contract, while denying the applicability of others. *See Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.").

Although Fauntleroy claims that he was not afforded an opportunity to fully review the loan agreement, he does not offer any

13

viable grounds to claim that he was under any measure of duress when he clicked "accept." *See Hine v. LendingClub Corp.*, 2023 WL 8113234, at \*5–6 (W.D. Pa. 2023) (rejecting plaintiff's claim "that she was not provided reasonable notice of the agreement to arbitrate her claims because the arbitration provision was never displayed to Plaintiff as it was hidden in hyperlinks" when "Plaintiff would not have been able to obtain the loan without selecting the electronic signature box and selecting the 'Confirm' button.").

To the extent Fauntleroy seeks to leverage the OneMain representative's alleged warning that he would not receive the loan money unless he accepted the terms on the screen, Doc. 20 at 4, that scenario does not render the loan agreement a contract of adhesion. As the Court of Appeals explained:

Pennsylvania has defined a contract of adhesion as a:

> standardized contract form offered to consumers of goods and services on [an] essentially 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in [the] form contract.

*Shaffer*, 68 F. App'x at 376 (quoting *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1066 (Pa. Super. Ct. 1992)). Fauntleroy was not a consumer, but

a borrower, free to contract with any lender of his choosing, or not at all.
Indeed, if he truly was not satisfied with his opportunity to review the
terms of the OneMain loan agreement, he "was free to reject the deal at
issue." *Id.* at 377. "Furthermore, an adhesion contract that will not be
enforced must be one that is unconscionable or oppressive,
unreasonably favoring one party over another." *Id.* Here, a review of
the loan agreement's arbitration clause finds that it does "not favor one
party over another as it equally applied to both parties." *Id.*

Accordingly, as Fauntleroy has offered nothing beyond repeated
naked assertions that he did not agree to the terms of the loan
agreement and its corresponding arbitration clause, the arbitrability of
this dispute is apparent based on the face of the complaint and its
attachments.

## C.    The Dispute Falls Within the Arbitration Clause

The Court next addresses whether this dispute falls within the
scope of the arbitration clause in the loan agreement between
Fauntleroy and OneMain. Where, as here, "the affirmative defense of
arbitrability of claims is apparent on the face of a complaint (or . . .
documents relied upon in the complaint)," "the FAA would favor

15

resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 481–82 (E.D. Pa. 2011) (footnote omitted). "The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief." *Guidotti*, 716 F.3d at 772 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Accordingly, when applying the Rule 12(b)(6) standard to a motion to compel arbitration, courts should examine whether there can be no reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision." *Parker v. Briad Wenco, LLC*, 2019 WL 2521537, at *2 (E.D. Pa. 2019), *report and recommendation adopted*, 2019 WL 2516059 (E.D. Pa. 2019) (citations and quotation omitted).

"In assessing whether a particular dispute falls within the scope of an arbitration clause," the Court must "focus . . . on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular*

16

*Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001)). If the parties' dispute falls within the scope of the arbitration agreement, the Court "must stay a pending lawsuit on application of one of the parties until such arbitration is concluded and order the parties to proceed to arbitration consistent with their agreement." *DCK N. Am., LLC v. Burns & Roe Servs. Corp.*, 218 F. Supp. 3d 465, 471 (W.D. Pa. 2016) (first citing 9 U.S.C. §§ 3–4; then citing *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 181–82 (3d Cir. 2010); and then citing *Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004)).

Here, a careful analysis of the arbitration clause in the loan agreement determines readily that Fauntleroy's claims fall within its scope. The clause contains a provision titled "CLAIMS AND DISPUTES COVERED," which "is intended to be broadly interpreted." Doc. 20-5 at 6. The clause lists several specific circumstances subject to arbitration, including:

- claims arising out of or relating to any aspect of the relationship between Lender and me, including, but not limited to, this Agreement or loan . . .

- claims arising out of or relating to any documents, disclosures, advertising, or actions or omissions, including any allegation of fraud or misrepresentation, relating to this or any previous loan . . .

17

- claims arising out of or relating to negotiations, performance, or breach of this or any previous loan . . . [and]

- claims arising out of or relating to the closing, servicing, collecting, or enforceability of any transaction involving Lender or me . . . .

*Id.*

Fauntleroy's complaint is premised entirely on the fallout of his contract and relationship, as a borrower, with OneMain, the lender, in obtaining a loan of $12,700 collateralized by his automobile. Doc. 20 at 3–16. A key theme of his complaint lies in OneMain's alleged refusal to afford him an opportunity to review the terms of the associated loan agreement, and his claim that OneMain forged his electronic signature on that document. *Id.* Ultimately, Fauntleroy's alleged injuries arose from a complication in his attempt to perform under the contract by paying off the loan. *Id.* All of those facts underpinning his claims fall squarely within the scope of the arbitration clause's provisions, and no reading of the complaint could conclude otherwise. Indeed, Fauntleroy raises no discernible dispute to this inquiry. Accordingly, the Court

finds that this action falls within the ambit of the loan agreement's arbitration clause.[3]

## IV.   <u>Conclusion</u>

For the reasons set forth above, the Court will grant OneMain's motion to compel arbitration, refer this matter to individual arbitration, and stay this action pending the outcome of those proceedings.  A separate order shall be issued.

Date:  July 24, 2026                                 *s/ Phillip J. Caraballo*
                                                     Phillip J. Caraballo
                                                     United States Magistrate Judge

---

[3] Throughout his pleadings, Fauntleroy raises a number of miscellaneous challenges, including ones premised on waiver, jurisdiction, and judicial estoppel, and requests for default judgment and sanctions.  *See generally* Docs. 29; 48.  None of those contentions have any procedural or substantive merit.